## A93A0694, A93A0695. LOWE v. BARNETT BANK OF ATLANTA;
and vice versa.
(433 SE2d 294)

BEASLEY, Presiding Judge.

Lowe, administrator of the estate of Melba Sims Moore, filed this

---

complaint against the Barnett Bank because of the bank's refusal to pay Lowe the proceeds of joint certificates of deposit (CD's) owned by Mrs. Moore at the time of her death. Lowe's position is that Mrs. Moore's estate, rather than surviving joint tenants, are entitled to the proceeds, because these tenants obtained their rights in violation of OCGA § 7-1-814. Both Lowe and the bank filed motions for summary judgment which the trial court denied. We granted both of their applications for interlocutory appeal. Case No. A93A0694 is Lowe's appeal. Case No. A93A0695 is the bank's appeal.

Mrs. Cobb owned four joint CD's which she purchased from Barnett's predecessor bank in the name of herself or her sister and one joint CD which she purchased in the name of herself or her husband. Each CD had a separate account number. Two CD's expressly stated that joint tenants had a right of survivorship; three did not.

On September 7, 1990, Mrs. Cobb went to the East Point branch of the Barnett Bank, where she regularly did business. She was accompanied by her brother and his wife. She met with the branch manager and told her that she wanted to remove the names of her husband and sister from the accounts because they were deceased; that she wanted to add her brother to her safe deposit account, her money market account, and four of the CD's; and that she wanted to add her sister-in-law to the fifth CD. All the requested changes were made in accordance with the bank's standard operating procedures.

In order to change the money market account, Mrs. Cobb and her brother signed new signature cards. In order to change the safe deposit account, they signed a new safe deposit agreement.

The status of the CD's with respect to names and addresses of payees, social security numbers, interest rates, maturity dates, and like information was maintained on the bank's computer system. All changes in CD's issued by the bank were made by a central data processing bank office pursuant to instructions received from branch offices, which dealt directly with customers. In order for Mrs. Cobb to substitute live persons for deceased individuals on the CD's, the bank required her to produce death certificates. However, she was not required to sign any bank form or other writing authorizing the changes in her CD accounts. She was not required to, and did not, produce the CD's. Pursuant to Mrs. Cobb's instructions, the manager typed a memorandum to the data processing office requesting that the information in the computer system be changed to show that the names of the deceased husband and sister had been deleted as co-payees and that other parties had been added. The manager prepared the memorandum in Mrs. Cobb's presence and gave her a copy of it.

Mrs. Cobb died on September 13, six days later. The data concerning the requested changes was entered in the bank's computers on September 14, the next day. Lowe appeared at the bank and tried

to close Mrs. Cobb's CD accounts as property owned by her estate at the time of her death, but the bank would not do it. Lowe's attorney later made written demand for payment of all proceeds of the CD's. The bank declined and paid the proceeds to the co-payees named by Mrs. Cobb.

Multiple-party accounts are governed by Article 8 of Chapter 1 of OCGA Title 7. OCGA §§ 7-1-810 through 7-1-821. A joint account is a type of multiple-party account which is payable on request to one or more of two or more parties, whether or not mention is made of any right of survivorship. OCGA §§ 7-1-810 (4); 7-1-810 (5) (A). OCGA § 7-1-813 (a) states, in pertinent part, "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created."

OCGA § 7-1-814 provides, "The provisions of Code Section 7-1-813 as to rights of survivorship are determined by the form of the account at the death of a party. Once established, the terms of a multiple-party account can be changed only: (1) By closing the account and reopening it under different terms; or (2) By presentation to the financial institution of a modification agreement in a form satisfactory to the financial institution and signed by all parties with a present right of withdrawal." OCGA § 7-1-816 states, in pertinent part, "Any multiple-party account may be paid, on request, to any one or more of the parties."

In reliance upon *Grady v. DeKalb County Teachers Fed. Credit Union*, 152 Ga. App. 86 (262 SE2d 250) (1979) and *Rawlins v. Campbell*, 199 Ga. App. 472 (405 SE2d 111) (1991), Lowe argues that Mrs. Cobb could not change the joint tenants on the CD accounts without complying with OCGA § 7-1-814. The bank argues that the CD's ceased to be multiple-party accounts upon the death of Mrs. Cobb's sister and husband. The bank also argues that when Mrs. Cobb appeared at the bank to change the CD's, she was the only party with a present right of withdrawal. Lowe does not contest the latter argument but rather maintains that in order to effectuate the changes in the account, written authorization from Mrs. Cobb was required.

We hold that once Mrs. Cobb produced her sister's and husband's death certificates and had them removed as joint tenants on the CD accounts, the accounts ceased to be multiple-party accounts subject to the strictures of OCGA § 7-1-814.

This distinguishes *Grady* and *Rawlins*, where we held that one joint tenant cannot unilaterally divest another joint tenant of his or her right to make withdrawals from the account. In this case, the deceased joint tenants' rights were divested by their deaths, not by unilateral act of a co-tenant.

Lowe has presented no evidence of any intention on the part of the decedent other than that sums remaining on deposit at her death belong to the surviving joint tenants as against her estate.

Consequently, the bank was entitled to summary judgment.

*Judgment in Case No. A93A0694 affirmed. Judgment in Case No. A93A0695 reversed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 1, 1993 —
RECONSIDERATION DENIED JUNE 18, 1993 — ▆▆▆▆▆▆▆▆

*Roger W. Moister, Jr., Griffin Patrick*, for appellant.

*Smith, Eubanks, Smith & Darden, Donald D. Smith*, for appellee.